Good morning. My name is Pete Connick. I represent David Delay and may it please the court. I'm here on a very ugly case, 17 charges of basically sex trafficking with young ladies. And we have a unique situation here, I believe. Mr. Delay, at the time of trial, was 51 years old and he got a 30-year-plus sentence. His co-defendant, Marissa Comer, engaged in the case. The reason why I bring that up is because of the obvious mental illness history of Mr. Delay and the fact that it was never brought up at trial in terms of a diminished capacity defense. Actually, it wasn't brought up? Didn't Judge Lasnik let him know during trial? I thought the record was that Judge Lasnik had him examined during a break in the trial, and then when he made further record about, well, he seems lucid to me. This was, I think, before he excluded him for a couple of days, if I understand the record correct. So when you say there was no evidence of mental impairment, isn't that the reason he had him examined? No. He fainted? Correct. Okay. So you're saying it was a physical... Correct. Okay. And what actually, what happened was, and this is in the beginning of the reply brief, he comes in on the third day of court and says basically, dehydrated, I can't go on, I need medical assistance. The court says to him, well, you seem okay. And he goes, he basically at this point in time says, I want to plead guilty. If the jury comes out, I'm going to tell them I'm pleading guilty because I'm not getting medical attention and I'm going to die or something to that effect. He persists. Judge Lasnik sends him up, I believe it was to Harborview. They check him out, say nothing's wrong. He insists he's dying basically. He won't come back to court until he's promised baby food and ice chips. Then he returns. So, again, what we're trying to do, so the answer to the court, no, it wasn't based on mental disability. Although at that point, the judge had even told him, said, look, you know, I called Harborview and I called the detention center down in Sea-Tac and they're saying there's nothing wrong with you. But, again, he insisted there was. So, at least in counts, of the 17 counts, at least counts 1 through 8 involve specific intent where diminished capacity could have been raised. And to address the court's question on whether there was ever a mental evaluation does, there was one done for competency in the beginning. And that's where we had the bipolar diagnosis? Well, no, he had, yes, yes, and a noted history of bipolar disorder. So, it wasn't. Sounds like your argument is framed in terms of incompetence or inadequate counsel at trial and failing to raise and press the diminished capacity defense. Is that correct? That is, that's correct in part. This is direct appeal. I understand that, Your Honor. The problem is, there are federal cases, which I've cited, where the court is asked to sui sponte, give an instruction, even if not asked for by the defense. And so, we're saying it's both. We think the court had an obligation when it saw over the course of time, including his testimony in particular, that there was an obligation to at least discuss diminished capacity and whether that was the defense. But trial counsel did not raise it, correct? That's correct. Okay. So, I'm trying to understand the argument, because it didn't seem like you really made ineffective assistance of counsel argument in the brief, but that sounds, as Judge Hawkins says, what you're saying now. But as I understand it, you're saying, in light of all these things that you've talked about on the record, the judge should have divined and on his own given a diminished capacity instruction. I believe, Your Honor, he should have raised, minimally raised the topic with the defense counsel. Right, because the defense counsel didn't see all the same things the judge saw? No, and not only that, but the judge, they would go down when he would be kept in the courthouse, but outside the presence of the jury. In the record, it shows the counsel would go down and say, we've talked to our client, he doesn't want to come up. And then, I think the most telling thing is he gets on the stand himself, Mr. DeLay, and his testimony is nothing less but delusional. And in particular, he's talking about when they asked, did you tell these women you would coax into supposedly doing a film or a documentary where you're going to get $20 million, and he had signed contracts with some. He says, did you tell them you had $153 million to make movies, documentaries? And basically, Mr. DeLay scoffs at that and says, no, why would I ever say that when I had $50 million in a bank that was given to me by a sheik from Dubai? And I had Jermaine Jackson looking at that. I flew over to London to check on a bank account. So basically, he's basically getting on the stand and saying this stuff that's delusional, but it had always been his position. So certainly, I think it was incumbent upon even the court to raise it with defense counsel. Mr. Connick, he didn't see a board-certified psychiatrist, a psychologist, but he did see a medical doctor during trial? Yes. And the medical doctor, while not a layperson like judges are, he had no reason, he or she, the doctor, had no reason to further evaluate the defendant. Is that the record? My understanding is he was not evaluated mentally, period. Okay. And you're here on plain error. You're here on a plain error analysis. Okay. Are you? Yes. Okay. And so it has to be plain and it has to so impact the proceedings as to essentially bring the law into disrepute. Is that plain error analysis? Say that. I'm sorry. It has to be so plain that the law is brought into, this is my way of characterizing it, disrespect. The trial was not legitimate. I mean, that's what you're saying in a plain error. Well, actually, I am saying that. I'm saying the trial wasn't fair if he didn't raise the most obvious defense, especially in view of his testimony. If you go further and you look at the sentencing with Mr. DeLay and what he's saying there about how he'll be vindicated by the Bible and he'll go to the media. Again, this is all things that are delusional. I think it's obvious, and not only is it obvious, but the district court, Judge Lasnik, made an adjustment downward because of his mental illness and bipolar history. Aren't we losing here a little bit of keeping our eye on the ball because the issue was his capacity at the time the crime was committed, correct? Correct. So I haven't seen any link between all the discussion we've been having and some of his statements to the time of the commission of the crime, which is the only thing that would have justified a diminished capacity defense. So what is your response to the time and the link issue? Well, Your Honor, one is if you look at the competency evaluation that was done, they said he suffered from bipolar disorder with certain symptoms, certain aspects to it, and part of it is delusional thinking. I think it's reasonable to infer that as a result he believed he could give people $20 million for a documentary, which is ridiculous. That was the testimony of trial. Well, we have cases that even say the fact that someone is mentally ill does not necessarily entitle them to a defense. You still have to have this link between the ability to form the intent and the time of the crime and the defendant's status at that time. Right, Your Honor. That seems to me what's missing here is evidence of that link, and simply being bipolar doesn't mean that you can't form the intent, does it? That's correct. Okay. I don't disagree with that, Your Honor. Did you want to save your remaining time? I just wanted to alert you that you're down to three minutes. No. But it's up to you. I'm okay. All right, good. If the Court's okay. We're fine. I'm going to sit down. All right. So, Your Honor, I think it's more than you just asked me is, well, don't you have to show a nexus? I think you have to take it a step further with what's presented. Can you infer a nexus? And this guy at the time during trial, you have to remember he's being treated for bipolar disorder, and he's taking a number of psychotropic medications, which are noted in the brief. He stops taking them. And once he stops taking them, that's when all of this starts. And that, I believe, coupled with his performance at trial and his performance outside of trial, he's consistently suffering from a mental illness. If you take the delusional thinking as part of that, I think you have to. And I would note, it was interesting where in you raised a moment ago, I think it was about a due process argument, and whether there is one in there and whether I got a And then it's actually the court Pirtle v. Morgan, which is a Ninth Circuit case, 2002. And it's 13-13, F-3rd, 11-60. And that was an interesting case because they raised voluntary intoxication. What Pirtle suffered from was a temporal lobe seizure or explosive dysfunctional control from chronic drug abuse. So at trial, it was a capital case. At trial, they raised voluntary intoxication as defense, but left out diminished capacity. And this court reversed, saying the jury needed to hear the diminished capacity defense, that instruction. And he didn't get a fair trial because he didn't have that, because he couldn't argue his theory of the case. So therefore, he didn't get a fair trial. So that's our main argument on that point, Your Honor. The other one had to do with, in particular, there are other issues we raised, but the instruction number 29. You've exceeded your time already. If you wanted to wrap up, you're welcome to do so. Your Honor, I would just point out on instruction number 29, that was a non-pattern instruction where several paragraphs were loaded onto it about how the jury should consider the victim's point of view. And it's so loaded that now the court, Judge Lassen, took out a couple paragraphs, but a couple paragraphs were left in, and it basically says you have to take the victim's stance and everything about her to judge whether they were particularly vulnerable or not. And we believe, for the reasons argued in our briefs, that non-pattern language was prejudicial. Thank you. Thank you. Good morning. May it please the Court, Sherrilyn Kosky for the United States. Is there anything you've just heard argued that's not responded to in your brief? I would just emphasize one point. I think every point is responded to in our brief. But just to clarify one point, Mr. DeLay's behavior at trial should not be confused with evidence. The way someone behaves at trial, and the jury did not even see this behavior. It was all outside the view of the jury. So just to be clear, there was zero evidence of diminished capacity, and I just wanted to make that clarification. Other than that, no. His arguments are addressed in our brief. But I will . . . Thank you. Okay. Any other questions on any of the other issues? I'm happy to address them. Oh, if we had them, you'd hear them. Great. Thank you very much. We ask that you affirm. All right. The case just argued. United States v. DeLay is submitted. Counsel, we gave you some extra time in your opening, and there was nothing additional to respond to. Thank you both for the argument this morning.
judges: Hawkins, McKeown, Pratt